UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

PICCARD PET SUPPLIES, CORP.,

Case No.: 3:24-bk-02434-JAB
Chapter 11

Debtor.

_____/

**DEBTOR IN POSSESSION'S EMERGENCY MOTION FOR AUTHORITY
TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363**

Debtor-in-Possession, Piccard Pet Supplies, Corp., (the "Debtor"), by and through its undersigned proposed counsel, hereby files its Motion for Authority to Use Cash Collateral Pursuant to 11 U.S.C. § 363, and in support thereof, respectfully states as follows:

**JURISDICTION**

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicate for the relief requested in this Motion is 11 U.S.C. §§ 105 and 363 and Rule 4001(d)(1)(D) of the Federal Rules of Bankruptcy Procedure.

**BACKGROUND**

3.      On August 15, 2024, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date"). Pursuant to Bankruptcy Code §§ 1107(a) and 1108, the Debtor is operating its business and managing its affairs as a debtor-in-possession. As of the date hereof, no trustee, examiner, or statutory committee has been appointed in this Chapter 11 case.

4.      The Debtor is a Florida corporation based in Jacksonville, Florida.  The Debtor's primary business is retail sales of pet supplies both online and at its brick-and-mortar store.

5.      The Debtor has financed its operations on a cash basis and via business credit cards. The Debtor has 10 (ten) pre-petition merchant cash advances/lenders that have a lien on the Debtor's cash and receivables. Those lenders are Ameris Bank ("Ameris"), Amazon Capital Services, Inc. ("Amazon"), Fox Business Funding ("Fox"), Fist Citizens Community Bank ("FCCB"), US Small Business Administration ("SBA"), White Road Capital, LLC d/b/a GFE Holdings ("GFE"), Sellers Funding Corp ("Sellers"), ODK Capital, LLC ("OnDeck"), Celtic Bank ("Celtic Bank"), and CloudFund, LLC ("Cloud Fund") (collectively the "Cash Collateral Lenders"). The Debtor relies on current revenues to fund its operations.

6.      The Debtor primarily generates income from retail sales of its pet supplies and related inventory. At the time of filing, the Debtor had a total balance of approximately $1,400 in its two business checking account the business generates approximate gross receipts of $130,000 per month (all collectively, the "Cash Collateral").

### RELIEF REQUESTED

7.      By this Motion, the Debtor seeks the entry of an Order authorizing its use of cash collateral pursuant to 11 U.S.C. § 363, Federal Rules of Bankruptcy Procedure 4001(b)(2) and Local Rule 4001-3; setting the time for a final hearing and objection deadline for this Motion; and granting such other and further relief as is just and proper.

8.      As set forth in the budget, incorporated herein and attached hereto as Exhibit "A", the Debtor requires the use of cash collateral to fund all necessary operating expenses of the Debtor's business.

9.      The Debtor will suffer immediate and irreparable harm if it is not authorized to use cash collateral to fund the expenses set forth in the Budget. Absent such authorization, the Debtor will not be able to maintain and protect its business.

10.    The Debtor acknowledges that Cash Collateral Lenders may have liens on the cash collateral in accordance with 11 U.S.C §§ 361 and 363. In connection therewith, the Debtor seeks the use of Cash Collateral in the ordinary course of business.

## CASH COLLATERAL AND THE RELIEF SOUGHT BY THE DEBTOR

11.    The Debtor's use of property of the estate is governed by Section 363 of the Bankruptcy Code, which provides that:

> If the business of the debtor is authorized to be operated under section … 1108 … of this title and unless the court orders otherwise, the [debtor] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, any may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1). A debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with Section 363 of the Bankruptcy Code. See 11 U.S.C. § 1107(a).

12.    When a Chapter 11 debtor-in-possession is authorized to operate its business, it may use property of estate in ordinary course of business, but is prohibited from using cash collateral absent consent of the secured creditor or court authorization. *In re Kahn*, 86 B.R. 506 (Bankr. W.D. Mich. 1988); *In re Westport-Sandpiper Associates Ltd. P'Ship*, 116 B.R. 355 (Bankr. D. Conn. 1990)(debtor may not use cash collateral unless entity that has interest in it consents or debtor proves that interest of the entity is adequately protected).

13.    "Cash collateral" is defined by the Bankruptcy Code as, "cash, negotiable instruments, documents of title securities, deposit accounts or other cash equivalents whenever acquired in the which the estate an entity other than the estate have an interest…" 11 U.S.C. § 363(a).  Any cash collateral generated by the Debtor may constitute the cash collateral of the alleged secured creditors.

14.     Further, the Debtor proposes to use the Cash Collateral in accordance with the terms of the Budget. The Debtor also requests that it be authorized: (i) to exceed any line item on the budget by an amount up to ten (10) percent of each such line item; or (ii) to exceed any line item by more than ten (10) percent so long as the total of all amounts in excess of all line items for the Budget do not exceed ten (10) percent in the aggregate of the aggregate of the total budget.

## APPLICABILITY AUTHORITY FOR RELIEF REQUESTED

**A.     The Court Should Enter an Order Authorizing the Continued Use of Cash Collateral Because the Debtor is Providing the Cash Collateral Lenders with Adequate Protection.**

15.     The Bankruptcy Code does not define "adequate protection" but does provide a non-exclusive list of the means by which a debtor may provide adequate protection, including "other relief" resulting in the "indubitable equivalent" of the secured creditors' interest in such property. See 11 U.S.C. § 361.

16.     Adequate protection is to be determined on a case-by-case factual analysis. *See Mbank Dallas, N.A. v. O'Connor* (*In re O'Connor*), 808 F.2d 1393, 1396 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985). For example, in O'Connor, the court held that "[i]n order to encourage the Debtors' efforts in the formative period prior to the proposal of a reorganization, the court must be flexible in applying the adequate protection standard." *O'Connor*, 808 F.2d at 1936 (citations omitted). See also *In re Quality Interiors, Inc.*, 127 B.R. 391 (Bankr. N.D. Ohio 1991) (holing that the granting or a replacement lien provided adequate protection).

17.     Adequate protection is meant to ensure that the secured creditors receive the value for which it originally bargained pre-bankruptcy. *Swedeland Development Group, Inc.*, 16 F.3d 552, 564 (3rd Cir. 1994) (citing *In re O'Connor*, 808 F.2d 393, 1396-97 (10th Cir. 1987)). Courts have noted that the essence of adequate protection is the assurance of the maintenance and continued responsibility of the lien value during the interim between the filing and the

confirmation. *In re Arrienes*, 25 B.R. 79, 81 (Bankr. D. Or. 1982). The purpose of adequate protection requirement is to protect secured creditors from diminution of value during the use period. *See In re Kain*, 86 B.R.506, 513 (Bankr. W.D. Mich. 1988); *In re Becker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re Ledgmere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990).

18.    In the instant case, adequate protection provided to Cash Collateral Lenders includes a replacement lien on the Debtor's receivables and the Debtor's projected positive cash flow.

19.    Section 361(2) of the Bankruptcy Code expressly provides that the granting of a replacement lien constitutes a means of providing adequate protection. 11 U.S.C. § 361(2). In the instant case, granting the Cash Collateral Lenders a replacement lien on post-petition collateral to the extent its prepetition collateral is diminished by the Debtor's use of cash collateral provides CAN with adequate protection. *See e.g., O'Connor*, 808 F.2d 1393; *In re Coody*, 59 B.R. 164, 167 (Bankr. M.D. Ga. 1986); *In re Dixie-Shamrock Oil & Gas, Inc.*, 39 B.R. 115, 118 (Bankr. M.D. Tenn. 1984).

**B.    The Use of Cash Collateral Will Preserve the Debtor's Going Concern Value Which Will Inure to the Benefit of the Cash Collateral Lenders and Other Creditors.**

20.    The continued operation of the Debtor's business will preserve its going concern value, enable the Debtor to capitalize on that value through a reorganization strategy, and ultimately facilitate the Debtor's ability to confirm a Chapter 11 plan. If the Debtor is not allowed to use cash collateral, it will be unable to operate and potentially cause harm to the property.

21.    The Debtor will use the cash collateral during the interim cash collateral period to pay normal business expenses, payroll, rent, utilities and otherwise maintain and protect its property.

22.     It is well established that a bankruptcy court, where possible, should resolve issues in favor of preserving the business of the debtor has a going concern.

> A debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use cash collateral in its effort to rebuild. Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities etc., the congressional policy favoring rehabilitation over economic failure would be frustrated.

*In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1019 (11th Cir. 1984).

23.     Accordingly, courts authorize the use of cash collateral to enhance or preserve the debtor's going concern value. For example, in *In re Stein*, 19 B.R. 458 (Bankr. E.D. Pa. 1982), the Court allowed a debtor to use cash collateral where the secured party was undersecured, finding that the use of cash collateral was necessary to the debtor's continued operations and the creditor's secured position can only be enhanced by the continued operation of the debtor's business. Id. at 460; *see also Federal Nat. Mort. v. Dacon Bolingbrook Assoc.*, 153 B.R. 204, 204 (N.D. Ill. 1993) (security interest protected to extent debtor reinvested rents in operation and maintenance of the property); *In re Constable Plaza Assoc.*, 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (debtor's reinvestment of rents to maintain and operate office building will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by [the] mortgage); *In re Dynaco Corp.*, 162 B.R. 389, 395-96 (Bankr. D. N.H. 1983)(finding that the alternative to the debtor's use of cash collateral, termination of its business, would doom reorganization and any chance to maximize value for all creditors); *In re Karl A. Neise, Inc.*, 156 B.R. 600, 602 (Bankr. S.D. Fla. 1981) (marginally secured creditor adequately protected by lien on postpetition property acquired by debtor, debtors can use cash collateral in the normal operation of their business).

24.     If the Debtor cannot use cash collateral, it will be forced to cease operations. By contrast, granting authority will allow the Debtor to maintain operations and preserve the going

concern value of its business which will inure to the benefit of any secured creditors and all other creditors.

25.     The Debtor believes that use of Cash Collateral pursuant to the terms and conditions set forth above is fair and reasonable and adequately protects the secured creditor in this case. The combination of: (i) the Debtor's ability to preserve the going concern value of the business with the use of cash collateral; and (ii) providing the Cash Collateral Lenders with the other protections set forth herein, adequately protects its alleged secured position under § 361(2) and (3). For all of the reasons stated above, this Court's approval of the Debtor's use of cash collateral is proper herein.

26.     The Debtor believes that the approval of this Motion is in the best interest of the Debtor, its creditors and its estate because it will enable the Debtor to (i) continue the orderly operation of its business and avoid an immediate total shutdown of operations; (ii) meet its obligations for necessary ordinary course expenditures, and other operating expenses; and (iii) make payments authorized under other orders entered by this Court, thereby avoiding immediate and irreparable harm to the Debtor's estate.

**CERTIFICATE OF NECESSITY AND REQUEST FOR EMERGENCY HEARING**

27.     The Debtor requests that the Court hold an emergency hearing on the Debtor-in-Possession's Emergency Motion for Authority to Use Cash Collateral Pursuant to 11 U.S.C. § 363 to avoid immediate and irreparable harm to the estate.

28.     The undersigned attorney certifies that this request is being made in good faith and is based solely upon the factual circumstances existing at the time of the filing of the motion.

WHEREFORE, the Debtor respectfully requests that this Court enter an order (a) authorizing the Debtor's use of cash collateral in accordance with the attached Budget and provide

related adequate protection; (b) granting the replacement liens set forth above in connection with

the use thereof; and (c) granting such other and further relief that is just and proper.

Respectfully submitted this 16th day of August, 2024.

/s/ Thomas C. Adam
Thomas C. Adam
Florida Bar No. 648711
2258 Riverside Avenue
Jacksonville, FL 32202
(904) 329-7249 Telephone
(904) 606-1245 Facsimile
tadam@adamlawgroup.com
*Counsel to Debtor*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the ***Motion For Authority To Use Cash Collateral***

***Pursuant To 11 U.S.C. § 363*** has been served by electronic transmission upon all parties having

entered an appearance in this case via the Court's CM/ECF system this 16th day of August, 2024

and via first class U.S. mail, postage prepaid on the following creditors:

***Amazon Capital Services, LLC***
410 Terry Avenue North
Seattle, WA 98109

***CloudFund, LLC***
400 Rella Blvd., Suite 165-101
Suffern, NY 10901

***Fox Capital Group, Inc.***
1920 E. Hallandale Beach, Blvd.
Suite 503
Hallandale, FL 33009

***On Deck Capital***
Client Services Center
4700 W. Daybreak Pkwy., Suite 200
South Jordan, UT 84009

***Sellers Funding Corp.***

1290 Weston Rd.
Suite 306
Fort Lauderdale, FL 33326

**White Road Capital, LLC**
d/b/a GFE Holdings
27-01 Queens Plaza North
Suite 802
Long Island City, NY 11101

**Celtic Bank**
268 S. State Street
Suite 300
Salt Lake City, UT 84111

**Ameris Bank**
c/o Christian George, Esq. & David E. Otero, Esq.
Akerman LLP,
50 N. Laura St., Suite 3100
Jacksonville, FL 32202

**US Small Business Administration**
14925 Kingsport Rd.
Fort Worth, TX 76155

**First Citizens Community Bank**
15 South Main Street
Mansfield, PA 16933

/s/ Thomas C. Adam
Thomas C. Adam

Label Matrix for local noticing
113A-3
Case 3:24-bk-02434-JAB
Middle District of Florida
Jacksonville
Fri Aug 16 10:45:44 EDT 2024

Ameris Bank
c/o Christian P. George, Esq.
Akerman LLP
50 North Laura St., Suite 3100
Jacksonville, FL 32202-3659

Piccard Pets Supplies, Corp
5521 Blanding Blvd
Jacksonville, FL 32244-1945

Amazon Capital Services, Inc.
410 Terry Avenue North
Seattle, WA 98109-5210

American Coradius International, LLC
2420 Sweet Home Rd Suite 150
Buffalo, NY 14228-2244

American Express Business Gold Rewards
P.O. Box 6031
Carol Stream, IL 60197-6031

American Express Platinum Card
P.O. Box 6031
Carol Stream, IL 60197-6031

American Express Simply Cash Business
P.O. Box 6031
Carol Stream, IL 60197-6031

Ameris Bank
GGL Department
3490 Piedmont Rd. NE Ste. 750
Atlanta, GA 30305-4829

Ameris Bank
c/o Christian P. George, Esq.
Akerman LLP
50 N. Laura St., Suite 3100
Jacksonville, FL 32202-3659

Ameris Bank
c/o David E. Otero, Esq.
Akerman LLP
50 N. Laura St., Suite 3100
Jacksonville, FL 32202-3659

Ameris Bank
c/o Raye C. Elliott, Esq.
Akerman LLP
401 E. Jackson St., Ste 1700
Tampa, FL 33602-5250

Ameris Bank Business Card
Cardmember Service  P.O. Box 790408
Saint Louis, MO 63179-0408

Amerisource Bergen
MWI Animal Health  P.O. Box 840537
Dallas, TX 75284-0537

Andrew D. Dorisio
300 West Vine Street, Suite 1700
Lexington, KY 40507-1818

Brownstein Hyatt Faber Schreck LLP
410 Seventeenth Street Ste. 2200
Denver, CO 80202-4432

Capital One Spark Business
P.O. Box 60519
City of Industry, CA 91716-0519

Celtic Bank
268 S. State Street Suite 300
Salt Lake City, UT 84111-5314

(p)JPMORGAN CHASE BANK  N A
BANKRUPTCY MAIL INTAKE TEAM
700 KANSAS LANE FLOOR 01
MONROE LA 71203-4774

Closer Pets
104A Longview St.
Conroe, TX 77301-4093

(p)CLOUDFUND LLC
400 RELLA BOULEVARD SUITE 165-101
SUFFERN NY 10901-4241

Concerta Card Company
PO Box 20057
Dallas, TX 75320-0001

Divvy
13707 S. 200 West Ste. 100
Draper, UT 84020-2443

Duval County Tax Collector
Kelly Papa, Assistant General Counsel
117 West Duval Street, Suite 480
Jacksonville FL 32202-5721

Feedvisor
96 spring street 7th floor
New York, NY 10012-3923

First Citizens Community Bank
15 South Main Street
Mansfield, PA 16933-1590

Florida Dept. of Revenue
Bankruptcy Unit
P.O. Box 6668
Tallahassee, FL 32314-6668

Fox Capital Group Inc.
1920 E. Hallandale Beach Blvd. Ste. 503
Hallandale, FL 33009-4723

Fuller Supply Company
1423 W Baker Hwy, Douglas
Douglas, GA 31533-2111

Internal Revenue Service
PO Box 7346
Philadelphia, PA  19101-7346

Kong Company LLC
16191 Table Mountain Parkway
Golden, CO 80403-1641

Law Offices of Kenneth H. Dramer
567 Broadway
Massapequa, NY 11758-5019

Marlon Martinez
5521 Blanding Blvd
Jacksonville, FL 32244-1945


Nutramax Laboratories
946 Quality Drive
Lancaster, SC 29720-4722

On Deck Capital
Client Services Center
4700 W. Daybreak Pkwy., Ste. 200
South Jordan, UT 84009-5133

Robert J. Matthews Company
2780 Richville Dr SE
Massillon, OH 44646-8396


Secretary of the Treasury
15th & Pennsylvania Ave., NW
Washington, DC 20220-0001

Sellers Funding Corp.
1290 Weston Rd. Ste. 306
Fort Lauderdale, FL 33326-1973

U.S. Securities & Exchange Commission
Office of Reorganization
950 East Paces Ferry Road, N.E.
Suite 900
Atlanta, GA 30326-1382


US Small Business Administration
14925 Kingsport Rd.
Fort Worth, TX 76155-2243

United States Attorney
300 North Hogan St Suite 700
Jacksonville, FL 32202-4204

United States Trustee - JAX 11
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801-2210


Vorys, Sater, Seymour and Pease LLP
301 E. 4th Street Ste. 3500
Cincinnati, OH 45202-4257

WebBank
215 State St Suite 1000
Salt Lake City, UT 84111-2336

White Road Capital LLC
d/b/a GFE Holdings
27-01 Queens Plaza North Ste. 802
Long Island City, NY 11101-4020


Thomas C Adam
Adam Law Group, P.A.
2258 Riverside Ave
Jacksonville, FL 32204-4620


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


Chase Ultimate Rewards
P.O. Box 15123
Wilmington, DE 19850

Cloudfund LLC
400 Rella Blvd. Ste. 165-101
Suffern, NY 10901

End of Label Matrix
Mailable recipients     45
Bypassed recipients      0
Total                   45

# EXHIBIT A

| In re: Piccard Pet Supply Corp | 3:24-bk-03424-JAB | | |
|---|---|---|---|
| | | | |
| **CASH COLLATERAL BUDGET** | | | |
| **April 18 2023 - June 15, 2023** | | | |
| | | | |
| **REVENUE** | **Amount** | | |
| Gross Revenue | $145,000.00 | | |
| Cost of Goods Sold | $55,000.00 | | |
| ***Net Revenue*** | | **$90,000** | |
| | | | |
| **EXPENSES** | | | |
| *Advertising & Marketing* | $450.00 | | |
| *Amazon Advertising* | $3,600.00 | | |
| *Amazon Seller Fees and Charges* | $12,000.00 | | |
| *Amazon Shipping Fees* | $450.00 | | |
| *Automobile Expense & Fuel* | $350.00 | | |
| *Bank Charges* | $900.00 | | |
| *License* | $50.00 | | |
| *Dues and Subscriptions* | $1,000.00 | | |
| *Ebay Fees* | $2,600.00 | | |
| *Equipment Lease* | $1,750.00 | | |
| *Insurance* | $2,100.00 | | |
| *Internet Expense* | $1,500.00 | | |
| *Lawncare* | $250.00 | | |
| *Office Software & Supplies* | $3,000.00 | | |
| *Contractors* | $1,500.00 | | |
| *Payoneer Charges & Fees* | $200.00 | | |
| *Paypal Fees* | $100.00 | | |
| *Payroll & Related* | $20,000.00 | | |
| *Repairs & Maintenance* | $1,200.00 | | |
| *Shipping Supplies* | $6,000.00 | | |
| *Shipping & Freight* | $9,000.00 | | |
| *Square/Stripe Fees* | $150.00 | | |
| *Taxes* | $1,200.00 | | |
| *Travel* | $100.00 | | |
| *Utilities* | $500.00 | | |
| *Walmart Fees/Commissions* | $8,000.00 | | |
| *Trustee Fees* | $650.00 | | |
| *Waste & Recycling* | $400.00 | | |
| Website | $600.00 | | |
| **Net Expenses** | | $79,600.00 | |
| | | | |
| **NET** | | | **$10,400.00** |